Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the Dusenberg Motors Corporation against the United States for $1,201,851.96. The defendant has demurred to the petition of the plaintiff.
The facts stated in the petition are as follows:
The plaintiff is a corporation organized and existing under the laws of the State of New York. The plaintiff, on November 20, 1917, entered into a contract with the United States for the production of 500 Liberty aircraft engines or motors and their spare parts. It was stated in the contract that said engines were to be “in accordance with the drawings and specifications attached hereto,” but no such drawings or specifications were annexed to the contract. The contract is set out in full, and annexed to the petition as Exhibit A.
At the time of entering into said contract the plaintiff was engaged in producing internal-combustion engines and had large commercial contracts, and had at that time an unabsorbed investment of $238,261.26 in said commercial contracts ; and by reason of the contract aforesaid it was necessary for the plaintiff to discontinue all of said commercial contracts, and this resulted in the loss to the plaintiff of all said commercial contracts.
The contractor, by said contract, agreed to deliver the 500 engines according to the following schedule: Ten in February, 1918; 50 in March; 125 in April; 165 in May; and 150 *98 in June, 1918; payment to be made of all cost, as defined in the contract, of the production of said engines and of an additional sum of $913.05 as a fixed profit on each engine delivered and accepted.
On December 11, 1917, the plaintiff entered into a supplemental agreement with the United States, a copy of which is filed with the petition and marked “ Exhibit'B,” whereby the fixed profit was changed from $913.05 to $625 for each engine, and the amount of estimated cost of production was changed from $6,087 to $5,000, and whereby it was agreed that the United States should place with the plaintiff company an additional order for 500 additional engines.
On December 24,1917, the plaintiff was notified in writing by the United States to stop work on the engines called for in its contract, as it was desired to substitute at least an equal number of engines of a different type; and on January 4, 1918, the plaintiff entered into a further supplemental agreement with the United States (marked Exhibit C and filed with the petition), whereby it was provided that the plaintiff should make for the United States 2,000 Bugatti motors and such spare parts for said motors as the United States might order from time to time in accordance with the specifications to follow. The amount of fixed profit for each article was to be $750 instead of $625, and the estimated cost was changed from $5,000 to $6,000. The articles were to be delivered in numbers fixed in the contract from March, 1918, to September, 1918.
On January 15, 1918, the plaintiff entered into a further supplemental agreement with the United States (rharked “ Exhibit D ” and filed with the petition), whereby the United States agreed to advance to the plaintiff an amount not exceeding $250,000, which the contractor was to repay to the United States with interest at the rate of 5 per cent per annum.
On February 11, 1918, the plaintiff entered into a further agreement with the United States (marked “Exhibit E” and filed with the petition) making further provisions for an advance by the United States to the plaintiff of the sum of $400,000, with interest at the rate of 6 per cent per annum.
*99 On February 14, 1918, the plaintiff entered into a further supplemental agreement with the United States (marked “Exhibit F” and filed with the petition) relating to the purchase of the plant of the F. I. A. T. corporation for the sum of $400,000.
On October 23, 1918, the plaintiff entered into a further supplemental agreement with the United States (marked “ Exhibit I ” and filed with the petition), whereby the United States agreed to make a further advance of $1,250,000 to the plaintiff, which the plaintiff agreed to repay with interest at the rate of 6 per cent per annum.
On September 25, 1918, the United States gave the plaintiff a production release, and on October 4,1918, the plaintiff had produced three Bugatti motors.
Active hostilities between the United States and Germany were suspended by the armistice of November 11,1918, and the plaintiff was notified that the United States desired and would take only 40 Bugatti motors of those contracted for, and the United States in accordance with the terms of the contract canceled the same, the contract having provided that if, in the opinion of the Chief Signal Officer of the United States Army the public interests required it, the contract might be terminated by 30 days’ notice in writing to the contractor.
After the termination of the contract a supplemental agreement of settlement was made and entered into on August 14,1919 (a copy of which marked “ Exhibit K ” is filed with the petition). By said agreement a full settlement was made between the parties, except that the plaintiff reserved the right to prosecute in any court of competent jurisdiction (1) a claim for interest for money borrowed by the contractor for the execution of the contract and used in the contract; (2) a claim asserted by the contractor for disbursement of certain expenditures made in connection with its commercial business by the termination of which the plaintiff claimed to have suffered a loss to the amount of such disbursements; and (3) a claim asserted by the contractor arising out of the cancellation of the provisions for the production of Liberty motors and substitution therefor of provisions for the production of Bugatti motors, and de *100 lay in production thereof, asserted by the contractor to be due to the Bugatti motors not being ready for production.
The plaintiff in this suit claims that there is due it the sum of $1,201,851.96, which sum is ascertained as follows: Fixed profit for each motor, $750; fixed profit on 2,000 motors, $1,500,000, which last sum is to be credited by the fixed profit on 40 motors, and other items amounting to the sum of $298,148.04.
The plaintiff claims as a part of its expenses in performing the original and supplemental contracts the following sum for interest and revenue stamps, $152,808.93. The plaintiff also claims the sum of $238,261.26, which it claims it had as an unabsorbed investment in its commercial business at the time of entering into the original contract with the United States, and which it claims is a total loss by reason of that contract and the supplemental agreements. The two claims above mentioned are claimed by the plaintiff as alternative to the amount of $1,201,851.96, the first claim reserved in the contract of settlement.
The facts set forth in the petition show the relations of the parties to be those of contractors. Although section 120 of the act of June 3, 1916, 39 Stat., 213 (commonly known as the National Defense Act), is cited in the contract and seems in some way to be relied upon in the plaintiff’s brief, the provisions of that section have nothing to do with contracts between persons and the United States. That section reads as follows:
“ Seo. 120. The President, in time of war, or when war is imminent, is empowered, through the head of any department of the Government, in addition to the present authorized methods of purchase or procurement, to place an order with any individual, firm, association, company, corporation, or organized manufacturing industry for sucn product or material as may be required, and which is of. the nature and kind usually produced or capable of being produced by such individual, firm, company, association, corporation, or organized manufacturing industry.
“ Compliance with all such orders for products or material shall be obligatory on any individual, firm, association, company, corporation, or organized manufacturing industry or the responsible head or heads thereof and shall take precedence over all other orders and contracts theretofore placed *101 with such individual, firm, company, association, corporation, or organized manufacturing industry ? and any individual, firm, association, company, corporation, or organized manufacturing industry or the responsible head or . heads thereof owning or operating any plant equipped for the manufacture of arms or ammunition, or parts of ammunition, or any necessary supplies or equipment for the Army, and any individual, nrm, association, company, corporation, or organized manufacturing industry or the responsible head or heads thereof owning or operating any manufacturing plant, which, in the opinion of the Secretary of War, shall be capable of being readily transformed into a plant for the manufacture of arms or ammunition, or parts thereof, or other necessary supplies or equipment, who shall refuse to give to the United States such preference in the matter of the execution of orders, or.who shall refuse to manufacture the kind, quantity, or quality of arms or ammunition, or the parts thereof, or any necessary supplies or equipment, as ordered by the Secretary of War, or who shall refuse to furnish such arms, ammunitions, or parts of ammunition, or other supplies or equipment at a reasonable price as determined by the Secretary of War, then, and in either such case, the President, through the head of any department of the Government, in addition to the present authorized methods of purchase or procurement herein provided for is hereby authorized to take immediate possession of any such plant or plants, and through the Ordnance Department of the United States Army, the manufacture therein in time of war, or when war shall be immiment, such product or material as may be required, and any individual, firm, company, association, or corporation, or organized manufacturing industry, or the responsible head or heads thereof, failing to comply with the provisions of this section shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment for not more than three years and by a fine not exceeding $50,000.
“The compensation to be paid to any individual, firm, company, association, corporation, or organized manufacturing industry for its products or material, or as rental for use of any manufacturing plant while used by the United States, shall be fair and just.”
In this case the procedure contemplated by that section was not followed, but the plaintiff voluntarily entered into a contract with the United States whereby it was to derive a large profit, which was set out in the contract and agreed upon by the parties. The recital in the contract that “ the President hereby places the following order with the con *102 tractor with the requirement that it comply with the contract hereinafter set forth,” does not alter the fact that the contract was a voluntary one. The contractor knew, or ought to have known, that it was not. in the power of the United States to compel it to enter into a contract, and that the provisions of the act cited in the contract did not confer any such power. Therefore the court in passing upon the issues presented in this case will consider the rights of the parties as being those of contractors.
The first claim to be considered is that for the recovery of the plaintiff of the sum of $1,201,851.96', that being the amount of the fixed profit which the plaintiff would have received had the contract been fully performed. The claim is that the contract would have been fully performed by the plaintiff before the date of the armistice had not the United’ States delayed in furnishing specifications to the plaintiff, and that that delay was a breach of the contract which entitles the plaintiff to the damages claimed. The real basis of the claim of the plaintiff, is the termination of the contract by the United States. Had not the contract been terminated the plaintiff would have completed it, and would have earned and received the fixed profit provided for in the contract. The contract provided for its termination. The United States terminated it strictly in accordance with the terms of the contract. The provision of the contract for its termination also provides what payments are to be made in that event. One of the payments specifically provided for was: “(1) On each finished article accepted the sum .provided as a fixed profit by Article IV, item (2) hereof.” Under the contract, therefore, no more could be paid unless it is established that the United States by their act or acts prevented the plaintiff from performing the contract during its progress. No such allegation is made in the petition, for it appears that the parties mutually agreed to the delays now complained of. The very nature of the contract was such that changes in the specifications, and the. delays incident thereto, were contemplated when the contract was entered into. The plaintiff took the risk of these changes and delays along with the risk that the contract might be terminated before the ar- *103 tides contracted for were completed. Having taken that risk the plaintiff can not now complain of the consequences, which it must have foreseen or contemplated the possibility of when it made the contract.
The contract expressly provided that the plaintiff should pay interest on the sums of money advanced it by the United States. There is nowhere in the contract any qualification of this provision, and it is not perceived how this court can relieve the plaintiff of its obligation.
The claim for $238,261.26, which the plaintiff alleges ivas a total loss to it by reason of its having to give up commercial contracts in that amount, which it had' on hand when it entered into the contract with the United States, is not tenable. The plaintiff voluntarily entered into the contract with the United States with full knowledge that its commercial contracts must be abandoned, and it was willing to do this and lose these commercial contracts in view of the large profits which it expected to receive under its contract with the United States. In the contract made with the United States a basis of payment was agreed upon. No loss which the plaintiff might have incurred from giving up its commercial contracts was provided for or contemplated.
For the foregoing reasons the demurrer of the United States to the petition of the plaintiff is sustained. The petition of the plaintiff will be dismissed and it is so ordered.
Gbaham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.